642 F.2d 1174
 7 Bankr.Ct.Dec. 705, Bankr. L. Rep. P 67,939
 In re WESTGATE-CALIFORNIA CORPORATION, a Nevada Corporation
et al., Debtors,
Curvin J. TRONE, Jr., Trustee and Herbert Kunzel, Additional
Trustee, etc., Plaintiffs,
v.
Helen SMITH, aka Helen Hill and Helen Smith, dba
International Interior Designs, Defendant/Appellant.
 No. 78-2603.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 21, 1980.
Decided March 23, 1981.
 
 Paul D. Engstrand, George J. Berger, Jennings, Engstrand & Henrikson, P. C., San Diego, Cal., for defendant-appellant.
 Jeffrey L. Levine, Wyman, Bautzer, Rothman & Kuchel, Los Angeles, Cal., argued for plaintiffs; Rauer L. Meyer, Wyman, Bautzer, Rothman & Kuchel, Los Angeles, Cal., on brief.
 Appeal from the United States District Court for the Southern District of California.
 Before BROWNING and POOLE, Circuit Judges, and SOLOMON,* District Judge.
 POOLE, Circuit Judge:
 
 
 1
 Mrs. C. Arnholt Smith has appealed the summary judgment order entered in the Chapter X reorganization of Westgate-California Corp., by which all of her claims were subordinated. Appellant acted as the interior decorator for Westgate pursuant to an agreement with her husband, who then controlled Westgate. She purchased and oversaw the handling of many valuable antique furnishings. She lived with her husband in the penthouse apartment of the Westgate Plaza Hotel without paying rent and without a rental agreement until shortly before Mr. Smith lost control of Westgate. At that time, appellant signed a lease.
 
 
 2
 Appellant's claims against Westgate fall into two general categories: those for money and those for furniture which appellant claims was only lent to Westgate. The money claims are primarily for decoration services. The trustees objected to all of the claims.
 
 
 3
 While the reorganization was pending, two separate actions were commenced by Westgate's receiver. The first concerned appellant's claimed ownership of furniture on Westgate premises, and the second was an unlawful detainer action to recover possession of the penthouse. These actions were consolidated for trial before a U.S. magistrate. Federal Deposit Insurance Corporation v. Westgate Plaza Hotel, et al., No. CV 74-50-E; California Little America Corporation, et al. v. Helen Smith, No. CV 74-576-E. The magistrate made lengthy findings of fact, including findings that appellant had engaged in conversion, fraud, breach of fiduciary duty and falsification of records. He found that nearly all of the controverted furniture was the property of Westgate, and he ordered appellant to pay the value of converted furniture, to pay the rent owing under the lease and to vacate the apartment. These findings and the order were adopted by the district court and have been affirmed by this Court. California Little America Co., et al. v. Smith, Nos. 76-2753, 76-2754 (9th Cir. unpublished opinion, 1980).
 
 
 4
 The trustees then filed a motion for partial summary judgment in the bankruptcy court seeking to place all of appellant's claims into a subordinate class that had been established for the claims of those "insiders and other parties who participated in the Westgate fraud." The motion was based upon the findings from the furniture litigation that appellant had engaged in rather gross inequitable conduct. Initially, the bankruptcy judge ordered subordination of all of appellant's claims. On subsequent motions, however, he modified the order to subordinate only the claims for furniture. On appeal, the district court ordered subordination of all claims.
 
 
 5
 Because this is an appeal from a summary judgment order, we must determine first, whether there exists a genuine issue of material fact as to appellant's inequitable conduct, and second, whether that conduct will justify subordination of all her claims.
 
 
 6
 * Appellant first contends that the findings of inequitable conduct made in the furniture litigation are not proper subjects for collateral estoppel, and hence that there exists a genuine issue of material fact as to whether she acted inequitably.
 
 
 7
 The doctrine of collateral estoppel is generally stated as follows:
 
 
 8
 Where there is a second action between parties, or their privies, who are bound by a judgment rendered in a prior suit, but the second action involves a different claim, cause, and demand, the judgment in the first suit operates as a collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended.
 
 
 9
 1B J. Moore, Federal Practice, P 0.441(2) (2d ed. 1974). It is uncontested that the present parties were parties or privies of parties to the furniture litigation. Hence, the issues here are whether appellant's inequitable conduct was in issue in the furniture litigation and whether the magistrate's disposition of that case depended upon it.
 
 
 10
 One of the actions involved in the furniture litigation was an unlawful detainer proceeding against appellant as tenant of the penthouse apartment. In order to resolve that case, it was necessary for the magistrate to determine whether appellant's lease to the premises was valid. Plainly, any fraud in procuring that lease would be material to his determination. Appellant contends, however, that she cannot be collaterally estopped by the magistrate's determination that she committed fraud. She argues that, because the magistrate posed alternative grounds upon which he might rest his decision that the lease was void, his finding of fraud was not essential to the judgment. This contention is contrary to the established rule:
 
 
 11
 (E)ven though the court rests its judgment alternatively upon two or more grounds, the judgment concludes each adjudicated issue that is necessary to support any of the grounds upon which the judgment is rested.
 
 
 12
 Id. at P 0.443(5). Thus, the magistrate's finding that appellant committed fraud in connection with the lease is a proper subject for collateral estoppel.
 
 
 13
 The other action involved in the furniture litigation concerned ownership of various items of furniture. The manner in which these properties came into Westgate's possession was so poorly documented that the magistrate found it necessary to resort to other means to determine their ownership. It was clear that all of the properties had been purchased by appellant; the magistrate therefore sought to determine whether appellant had acted on her own account as an independent contractor, or on behalf of Westgate as its agent. He found that she had acted as Westgate's agent and that therefore the properties belonged to Westgate. Plainly the subject of this finding was in issue and controverted in the furniture litigation, and a determination of it was essential to the judgment. Appellant is therefore estopped to deny that she was Westgate's agent.
 
 
 14
 The magistrate found not only that appellant was Westgate's agent, with all of the legal duties that relationship entails; he also found that appellant had breached those duties. She had, he determined, failed in her duty to maintain proper accounts for Westgate, failed to segregate Westgate property from her own, and had, in fact, compiled false and misleading records in favor of herself. Appellant urges that these findings, in the language of classic collateral estoppel theory, amount to "evidentiary" rather than "ultimate" facts. However, a more functional approach to this problem is appropriate. It is clear that appellant's duties and actions in relation to the accounts were before the court and were fully litigated and that evidence concerning the possessor's accounts would be of unquestioned relevance and importance in an action to determine ownership of property. Further, in order for the magistrate to rule as he did, he must have found and did find that the accounts were inadequate to prove ownership by either party, and that appellant's proffered records were not credible. In fact, he determined that they had been fabricated. Inasmuch as appellant's breach of her fiduciary duties was fully litigated before the magistrate and determination of it was essential to his determination of the action, further litigation on the question is not required.
 
 
 15
 The magistrate also found appellant liable for the conversion of a large amount of valuable furniture belonging to Westgate. Appellant claims that this finding cannot be the subject of collateral estoppel because the issue of conversion was not before the court. This contention was heard and rejected by this court in appellant's appeal from the furniture litigation itself, California Little America Co. v. Smith, No. 76-2754 (9th Cir. unpublished opinion, 1980), and we need not reconsider it here.
 
 
 16
 Thus, it is well established, and not open to further question, that appellant has committed numerous serious inequitable acts in the course of her relationship with the bankrupt. The question remains whether those acts justify subordination of all of appellant's claims.
 
 II
 
 17
 Bankruptcy courts are empowered to subordinate claims where subordination will promote a just and equitable distribution of the bankrupt estate. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).
 
 
 18
 Subordination is a means of regulating distribution results in bankruptcy by adjusting the order of creditors' payments to the equitable levels of their comparative claim positions.... (I)ts fundamental aim is to undo or to offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results.
 
 
 19
 In re Kansas City Journal-Post Co., 144 F.2d 791, 800 (8th Cir. 1944). Subordination is an equitable power and is therefore governed by equitable principles. The Supreme Court has held that the claims of the debtor's fiduciaries may not be subordinated simply by virtue of the fact that the claimants are fiduciaries; it must be shown that they have acted inequitably toward the debtor to its detriment or to their own benefit. Comstock v. Group of Institutional Investors, 335 U.S. 211, 229, 68 S.Ct. 1454, 1463, 92 L.Ed. 911 (1948). Of course, the same limitation to the subordination power protects other claimants; hence, a claim will not be subordinated unless it is shown that the claimant has acted inequitably in the course of his relationship with the debtor and that those actions have harmed the debtor or his other creditors in some way. In re Ahlswede, 516 F.2d 784, 788 (9th Cir. 1975).
 
 
 20
 The time-honored maxim that equity will not enforce a penalty adds another limitation to the subordination power. Bankruptcy courts must take care not to subordinate claims where doing so will operate only to penalize the claimant.
 
 
 21
 (T)he power of subordination necessarily must be measuredly and not blankly exercised.... It should not operate to take away anything punitively to which one creditor is justly entitled in view of the liquidation finality, and bestow it upon others, who in the relative situation have no fair right to it. It can therefore ordinarily go no farther than to level off actual inequitable disparities on the bankruptcy terrain for which a creditor is responsible, to the point where they will not create unjust disadvantages in claim positions and liquidation results.
 
 
 22
 In re Kansas City Journal-Post, supra, at 800-01. As a general matter, the import of this restriction will be that the court ought not to subordinate where the value of the claim greatly exceeds the amount of damage that the claimant has inflicted by his inequitable conduct. See Matter of Mobile Steel Co., 563 F.2d 692, 701 (5th Cir. 1977). Moreover, where the claimant has provided full restitution or adequate assurances thereof, subordination of his claims will operate only to punish his wrongdoing and will therefore be inappropriate. See In re Kansas City Journal-Post, supra, at 801-02.
 
 
 23
 This does not mean, however, that before subordination will be appropriate a court must conduct extensive litigation to determine the extent of damage that the claimant has caused. Where it has been shown that the claimant acted inequitably in his relationship with the debtor, and that the debtor has suffered harm thereby, it is incumbent upon that claimant to come forward, with reasonable dispatch and certainty, with evidence indicating that the harm caused by the challenged conduct was discrete in nature and did not result in general prejudice to the bankruptcy proceedings, and that the court can without undue complication determine the amount and depth of harm done. These are the type of findings which the bankruptcy court can readily reach. If the appropriate showing is not made the claimant may face subordination. Even where the claimant succeeds and the damage caused has been ascertained, restitution to the estate should be a condition of avoiding subordination. Restitution would place the debtor and creditors in the position to which they are entitled without imposing an additional sanction. Punishment under such circumstances would be unseemly and could only provide the estate and its creditors with a windfall.
 
 
 24
 It is clear that Westgate suffered numerous harms at the hands of appellant. She converted valuable items of Westgate personal property, she defrauded Westgate when she leased its penthouse suite, and she breached her duty to keep records of transactions involving the decoration of the Westgate hotels. The first two wrongs were, however, remedied in the furniture litigation, where appellant was ordered to pay the value of the converted furniture and of her use of the penthouse and was ordered to vacate the penthouse. Thus, of the wrongs done, only the breach regarding recordkeeping remains unremedied.
 
 
 25
 Under the circumstances, appellant's recordkeeping, though faulty and false, does not warrant subordination of all her claims. True, she maintained the antique furniture accounts in a shambles and falsified many records to buttress her claim of ownership to certain items. Nonetheless, her wrongs did not adversely affect the bankruptcy proceedings other than in discrete particulars. Appellant was responsible only for those records that related to the furniture, and the furniture litigation has settled all questions regarding those records. The magistrate determined which items were owned by Westgate and which were not. Appellant's wrong has thus been nullified by the resolution of the furniture litigation; it has no lingering effect upon the ability of the bankruptcy court to determine and distribute Westgate's assets. Therefore, subordination of all of appellant's claims at this point would be primarily punitive and not consistent with equitable principles.
 
 
 26
 Inasmuch as the furniture litigation has conclusively settled that appellant has no right to the disputed furniture, her claims to those articles are without merit and might well have been dismissed. The district court may therefore wish to reconsider that portion of its subordination order. The order is reversed to the extent that it subordinates appellant's claims for money and is remanded for further proceedings consistent with this opinion.
 
 
 27
 SOLOMON, Judge, dissenting.
 
 
 28
 I dissent from that part of the majority opinion which holds that the order subordinating all of Helen Smith's claims in bankruptcy may be too broad, and which remands to the District Court for reconsideration that portion of the order which subordinates her claims for money.
 
 
 29
 The majority opinion recites that Mrs. Smith was guilty of making false claims, conversion, breaches of her fiduciary duty, fabrication of records, and many acts of inequitable conduct. The majority opinion also states that it was "clear that Westgate suffered numerous harms at the hands of appellant." In my view, these facts found by the majority amply support the District Court's summary judgment which subordinated all her claims.
 
 
 30
 This was not a single act of inequitable conduct but it is wrongdoing so pervasive and so damaging to the bankrupt that no court governed by equitable principles should permit appellant to share in the assets of a bankrupt corporation on a parity with other creditors and stockholders.
 
 
 31
 I would affirm the district court's judgment in its entirety.
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge, District of Oregon, sitting by designation