**Edward G. REINER, Plaintiff/Appellant,**

v.

**WASHINGTON PLATE GLASS CO., INC., Defendant/Appellee.**

**In re WASHINGTON PLATE GLASS CO., INC.**

Civ. A. No. 82–1486.
Bankruptcy No. 81–00235.
Adv. No. 81–0097.

United States District Court,
District of Columbia.

Sept. 28, 1982.

Richard H. Gins, Washington, D.C., for plaintiff/appellant.

Herbert L. Karp, Washington, D.C., for defendant/appellee.

MEMORANDUM

GESELL, District Judge.

This is an appeal from an Order of The Honorable Roger M. Whelan, United States Bankruptcy Judge. The Bankruptcy Court ruled that the claims of appellant Reiner, a secured creditor, are to be subordinated to those of the general unsecured creditors in this involuntary bankruptcy proceeding. After considering the issue, which has been fully briefed and argued, the Order of the Bankruptcy Court is affirmed and the appeal dismissed.

Washington Plate Glass Co., Inc. ("WPG"), the bankrupt concern, is a District of Columbia corporation. It ceased

business operations in November, 1980, and the bankruptcy petition was filed in April, 1981. Its principal assets are accounts receivable.

Reiner was president and sole stockholder of WPG until 1971, when he transferred fifty percent of the stock to the sales manager. In October, 1977, he withdrew from the business and sold his remaining fifty percent to the corporation, taking back a note secured by assets of the company. He was to be paid in installments over ten years, with interest. This transaction was not fraudulent nor in anticipation of bankruptcy. WPG was solvent at the time and remained solvent at least until 1980 and payments were regularly made. The purchased stock was carried in WPG's treasury, not retired, and the security interest was recorded. WPG defaulted on Reiner's note in 1980 and was insolvent in April, 1981.

The Bankruptcy Court acted pursuant to section 510(c) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 510(c), which provides:

[A]fter notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest....

Section 510 incorporates into the statute the doctrine of equitable subordination as it has been developed, and continues to be developed, by the courts. S.Rep. No. 989, 95th Cong., 2d. Sess. 74 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. That doctrine permits the bankruptcy court "to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). The exercise of equitable subordination power is appropriate when there is a showing of fraud, inequity, or unfairness. *Pepper, supra* at 305–07, 60 S.Ct. at 244–45; *In re Multiponics, Inc.,* 622 F.2d 709, 714–20 (5th Cir.1980).

The bankruptcy court subordinated appellant Reiner's claim after determining that the bankrupt corporation's promise to pay for Reiner's stock must be viewed as conditioned upon the continued ability of the corporation to pay without impairing capital or creditors' interests. That decision is wholly supported by decisions in other Circuits. *In re Fechheimer Fishel Co.,* 212 F. 357 (2d Cir.1914); *In re Trimble Co.,* 339 F.2d 838 (3d Cir.1964); *Mountain State Steel Foundries, Inc. v. C.I.R.,* 284 F.2d 737 (4th Cir.1960); *Robinson v. Wangemann,* 75 F.2d 756 (5th Cir.1935); *McConnell v. Estate of Butler,* 402 F.2d 362 (9th Cir.1968).[1] As the Court of Appeals for the Fifth Circuit stated in *Robinson:*

A transaction by which a corporation acquires its own stock from a stockholder for a sum of money is not really a sale. The corporation does not acquire anything of value equivalent to the depletion of its assets, if the stock is held in the treasury, as in this case. It is simply a method of distributing a proportion of the assets to the stockholder. The assets of a corporation are the common pledge of its creditors, and stockholders are not entitled to receive any part of them unless creditors are paid in full. When such a transaction is had, regardless of the good faith of the parties, it is essential to its validity that there be sufficient surplus to retire the stock, without prejudice

---

1. Frequently these rulings are reinforced by state statutory provisions. The Bankruptcy Court found and appellee conceded at oral argument that WPG was incorporated in 1953. Accordingly, a D.C.Code provision governing the conditions under which a shareholder may sell his stock to the issuing corporation, which was enacted in 1954 to apply prospectively, is not technically applicable. This provision, D.C. Code § 29–305, is, however, a statement of policy which applies to all District of Columbia corporations incorporated since 1954. It is conceded that the Reiner transaction in 1977 could not have met this statutory standard had the statute been applicable. These circumstances bolster the Bankruptcy Court's view that it would be inequitable to afford priority to the claim here in dispute.

to creditors, at the time payment is made out of assets . . . .

*Robinson, supra* at 757.

Under that principle, the Bankruptcy Court correctly found "that enforcement of [Reiner's] security interest as of the date of bankruptcy would be . . . manifestly unfair to the general unsecured creditors of the debtor corporation." *In re Washington Plate Glass Co.,* No. 81–00235, Memo.Op. at 4 (Bankr.D.D.C., April 28, 1982). No evidence was introduced that Reiner's sale provided any benefit to the corporation. It was a sale negotiated between a closely-held corporation and a major stockholder and officer. Reiner has clearly failed to meet the burden he faces under *Pepper v. Litton, supra* 308 U.S. at 306, 60 S.Ct. at 245, of showing the "inherent fairness" of the transaction in question.

The Fifth and Ninth Circuits have held that equitable subordination is only appropriate where, in addition to inequity, it can also be shown that the interests of creditors have been prejudiced or an unfair advantage conferred on the claimant, and subordination is not inconsistent with the Bankruptcy Act. *Multiponics, supra* at 720–22, *In re Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir.1977); *In re Westgate-California Corp.,* 642 F.2d 1174, 1178 (9th Cir.1981). Given the insolvency of WPG, enforcement of Reiner's secured interest would clearly prejudice the interests of the corporation's unsecured general creditors and confer an unfair advantage on Reiner.[2] Equitable subordination under the circumstances of this case is also consistent with the Bankruptcy Act's fundamental purpose of preserving the bankrupt's assets for the benefit of creditors. *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374, *rehearing denied,* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131. Consequently, the Bankruptcy Court's subordination of Rein-

er's interest on equity grounds must be upheld.

AFFIRMED.

---

**2.** On appeal, appellant suggests that because Reiner's security interest was recorded, general creditors of the corporation should have been on notice of the lien and cannot now claim prejudice. Apart from practical concern about the efficacy of such constructive (rather than actual) notice, it appears that the recordation in question did no more than state that a lien existed on the corporation's assets. In the absence of further information concerning the transaction upon which the lien was based, such a statement by itself is insufficient to give creditors notice that would justify estopping claims of prejudice.