POOLE, Circuit Judge:
This appeal involves the applicability of two equitable rules, known as the Six Months Rule and the Necessity of Payment Rule, in determining the avoidability of certain payments made to creditors after a bankruptcy petition was filed. The creditors [1] seek to extend these equitable rules to non-railroad reorganizations. After an examination of the development of the rules and the Bankruptcy Code, 11 U.S.C. § 101 et seq., we decline to so do and accordingly affirm the decision of the district court.

Background

In April, 1981, Shoemaker Trucking Company, Inc. (“Shoemaker”) and its parent company, B & W Enterprises, Inc. (“B & W”), the debtors in this action, filed voluntary petitions of bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. The debtors remained in possession of their assets and operated their trucking business until December, 1981, at which time the cases were voluntarily converted into liquidation bankruptcies under Chapter 7 of the Bankruptcy Code. See 11 U.S.C. §§ 1108, 1112(a).
After the debtors had filed under Chapter 11, they made a number of payments on pre-petition debts. The debtors agreed with Trebar, Inc., that Trebar would continue to extend credit to the debtors for providing truck parts and repair services if they paid off the outstanding credit balances for the first two months of 1981. The debtors reached an understanding with Goodman Oil Company that Goodman Oil would continue to sell fuel to the debtors so long as they paid off a portion of existing pre-petition debts every time a load of fuel was delivered, in addition to paying in full for each current load. At that time, Goodman Oil’s prices were lower than those of its competitors. The debtors also paid off pre-petition debts to Krueger’s Auto Truck Stop and to Interstate Mack, and these entities continued to extend credit and provide supplies and services to Shoemaker and B & W.
The parties agreed that the credit arrangements for the fuel and services provided by Goodman Oil and Krueger’s Auto Truck Stop, and the parts and services provided by Interstate Mack and Trebar were necessary and essential to the operation of the debtor’s business following the petition for bankruptcy under Chapter 11. These various credit agreements and payments were made without notice, hearing, or authorization from the supervising bankruptcy court.
The trustee of the debtor’s estate sought to avoid and recover the payments made to creditors on pre-petition debts. The bankruptcy court found that the payment of these pre-petition debts with assets of the estate violated 11 U.S.C. § 549 as unauthorized post-petition transfers of property of the estate, which are recoverable under 11 U.S.C. § 550. Section 549 provides, in relevant part:
(a) Except as provided in subsection (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—
(1) that occurs after the commencement of the case; and
(2) (B) that is not authorized under this title or by the court.
Section 550 provides for the recovery of property improperly transferred:
*536 (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made...
The bankruptcy court rejected the creditor’s claims that these payments were nonetheless sanctioned by the two equitable rules known as the Six Months Rule and the Necessity of Payment Rule. The district court affirmed, and this appeal followed. Because the facts have been stipulated by the parties, we review only the legal conclusions of the district court under a de novo standard. Gaines v. Haughton, 645 F.2d 761, 768 n. 13 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).
1. The Six Months Rule
The Six Months Rule stems from the historical practice of initiating railroad receiverships with an order appointing a receiver who was granted court authorization to pay certain pre-petition debts for labor, equipment, supplies or improvements from post-petition operating receipts. In re Boston and Maine Corp., 634 F.2d 1359, 1366 (1st Cir.1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1518, 67 L.Ed.2d 817 (1981). The rule was equitable in nature and applied only to expenses necessary for the continued operation of the railroad which were incurred in the period immediately preceding the petition for reorganization. Id. at 1378. See generally 6 Collier on Bankruptcy § 9.13[5] at 1633-34 (14th ed. 1978). A number of subsidiary principles and limitations have developed in regard to the Six Months Rule, and some uncertainty still attaches to the proper delineation of this rule to the classification and payment of claims. See generally In re Boston and Maine Corp., 634 F.2d at 1365-82.
The Six Months Rule was given statutory recognition in Section 77(b) of the Bankruptcy Act, 11 U.S.C. § 205(b) (1976) [repealed], which provided:
For all purposes of this section unsecured . claims, which would have been entitled to priority if a receiver in equity of the property of the debtor had been appointed by a Federal court on the day of the approval of the petition, shall be entitled to such priority and the holders of such claims shall be treated as a separate class or classes of creditors.
The language of the 1978 Act, 11 U.S.C. § 1171(b), is the same in substance as that of Section 77(b),[2] and there is little doubt that Congress intended that § 1171(b) operate to continue the Six Months Rule in granting certain creditors priority. See H.R.Doc. No. 137, 93d Cong., 1st Sess. 424 (1978) (House Report states that § 1171(b) intended to continue priority rules of § 77(b)); In re Boston and Maine Corp., 634 F.2d at 1379-80 n. 35; 5 Collier on Bankruptcy ¶1171.02 (15th ed. 1979).
In so retaining the Six Months Rule, Congress also intended to continue limiting its applicability to railroad reorganizations. The rule has traditionally been applied only in railroad cases, see generally In re Boston and Maine Corp., 634 F.2d at 1366, although some cases decided prior to the 1978 Act suggested that the rule could be extended to other public service companies as well, Dudley v. Mealey, 147 F.2d 268 (2d Cir.), cert. denied, 325 U.S. 873, 65 S.Ct. 1415, 89 L.Ed. 1991 (1945). In structuring the 1978 Act, Congress placed the provision involved here, § 1171(b), which incorporates the equity receivership rules, in subchapter IV of title 11. This subchapter deals exclusively with railroad reorganizations. The Bankruptcy Code then further provides in 11 U.S.C. § 103(g) that: “Subchapter IV of *537 chapter 11 of this title applies only in a case under such chapter concerning a railroad.”
The intent of Congress could hardly be more clear. It has deliberately limited the application of the Six Months Rule to the area of railroad reorganizations, the focus of concern to which it traditionally has been limited. Accordingly, we find that under the Bankruptcy Code, the Six Months Rule is applicable only in cases concerning railroads.
2. The Necessity of Payment Rule
The historical development of the Necessity of Payment Rule parallels that of the Six Months Rule. However, unlike the Six Months Rule, it is not clear that the Necessity of Payment Rule has been retained in the Bankruptcy Act of 1978, 11 U.S.C. § 101 et seq. We need not reach the question whether the Necessity of Payment Rule has survived the 1978 Act, however, for, if it has, we would decline to apply it beyond the context of railroad reorganizations.
The Necessity of Payment Rule is not an equitable rule of priority. Rather, it is a rule developed for the protection of trustees of a railroad who are faced with threats to the continued operation of the line during reorganization. In re Boston and Maine Corp., 634 F.2d at 1382; In re Penn Central Transportation Co., 458 F.Supp. 1234, 1326 (E.D.Pa.1978), aff’d in part, remanded in part, 596 F.2d 1102 (3rd Cir.1979). The rule may be invoked by trustees as justification for the payment of pre-petition debts paid under duress to secure continued supplies or services essential to the continued operation of the railroad. In re Boston and Maine Corp., 634 F.2d at 1382.
Because the Necessity of Payment Rule does not concern priorities of creditor claims, it is not included by reference in § 1171(b). Therefore, the limitation to railroad cases imposed by § 103(g) is not applicable. Nevertheless, we decline to extend the rule to the facts of this case. The Necessity of Payment Rule was created for and has been applied only to railroad cases. Absent compelling reasons, we deem it unwise' to tamper with the statutory priority scheme devised by Congress in the 1978 Act. See 11 U.S.C. § 507. Even if we were convinced that the Necessity of Payment Rule survived the 1978 Act, appellants have not presented to this court sufficient justification for extending the Necessity of Payment Rule to trucking reorganizations.
3. General Equitable Powers of the Court
Appellants contend that the 1978 Act grants courts the general equitable powers necessary to overrule the priority scheme contained in the Act and apply rules such as the Six Months Rule and Necessity of Payment Rule when appropriate. This argument is premised on section 510(c) of the 1978 Act, which provides, in pertinent part:
(c) Notwithstanding subsections (a) and (b) of this section, after notice and hearing, the court may—
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of another allowed claim or all or part of an unallowed interest to all or part of another allowed interest...
This provision is not applicable to the facts of this case. What appellants seek is not subordination of a certain claim, but rather elevation of their claims over those of other creditors of the same class, the class of unsecured creditors. This is not a power given the courts by the 1978 Act. 3 Collier on Bankruptcy If 507.02 (15th ed. 1979). Section 507 establishes the priorities of creditors intended by Congress; and section 1123 requires that a chapter 11 plan must “provide the same treatment for each claim or interest of a particular class.” 11 U.S.C. § 1123. There is no indication that Congress intended the courts to fashion their own rules of super-priorities within any given priority class. See 3 Collier on Bankruptcy If 507.02 (15th ed. 1979).
Further, the subordination of a creditor’s claim normally requires a showing that the creditor “has acted inequitably in the course *538 of his relationship with the debtor and that those actions have harmed the debtor or his other creditors in some way.” Troné v. Smith (In re Westgate-California Corp.), 642 F.2d 1174, 1178 (9th Cir.1981), citing In re Ahlswede, 516 F.2d 784, 788 (9th Cir.), cert. denied, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975). No such demonstration of misconduct on the part of all the other unsecured creditors has been made by appellants to justify subordination of the others’ claims.

Conclusion

Neither the Six Months Rule nor the Necessity of Payment Rule is applicable to the facts of this case. The bankruptcy court properly declined to employ section 510(c) as a device for granting appellants priority over other members of their class. The judgment of the district court is AFFIRMED.

. Only four creditors join in this appeal; the others previously settled their claims.

. 11 U.S.C. § 1171(b) provides:
Any unsecured claim against the debtor that would have been entitled to priority if a receiver in equity of the property of the debt- or had been appointed by a Federal court on the date of the order for relief under this title shall be entitled to such priority in the case under this chapter.