FLETCHER, Circuit Judge:
Appellant La Grand Steel Products Co. appeals the district court’s decision that reversed the bankruptcy court’s order subordinating the claims of appellees Harper and Goldberg to those of unsecured creditors. The claims arose from debts the corporation incurred when it repurchased shares owned by Harper and Goldberg. The district court held that although payment of the debts by an insolvent corporation would be illegal under Oregon law, it would be inequitable to subordinate the Harper and Goldberg claims. We reverse and remand for further proceedings.
BACKGROUND
In 1976, appellees Harper and Goldberg were principal shareholders in debtor Poole, McGonigle & Dick, Inc. In April 1976, the debtor repurchased Harper’s shares pursuant to a stock purchase agreement providing for a downpayment with the balance due in installments through 1980. In July 1977, the debtor repurchased Goldberg's shares pursuant to another stock purchase agreement providing for a downpayment and a negotiable promissory note payable on July 1, 1980. The parties agree that the debtor was financially solvent and able to pay the full purchase price on the dates of the respective purchases. Neither transaction was entered into in contemplation of bankruptcy.
In 1977 and 1978, the debtor made partial payments of principal and interest on the debt owed to Harper, and the debtor and Harper renegotiated the agreement to extend payments through 1981. However, the debtor failed to pay Harper after 1978 and failed to pay Goldberg when the note came due in 1980. Goldberg filed a suit against the debtor and its corporate officers in state court that was scheduled to go to trial on April 20, 1982. On March 25, 1982, the debtor filed a chapter 11 petition in bankruptcy.
The bankruptcy court granted Goldberg relief from the automatic stay so that Goldberg could liquidate his claim against the debtor. Just before trial, the parties to the state court action settled, contingent on the bankruptcy court’s approval of the settlement agreement. Harper, who chaired the creditors’s committee, consulted with the committee’s counsel and with two other members of the committee, none of whom objected to the settlement. Harper so advised the bankruptcy court and on April 19, 1982, the bankruptcy court entered an order approving the settlement. The order provided in part that Goldberg’s claim was a “general, unsecured, non-priority, nonsubordinated claim.”
In mid-1983, the bankruptcy court approved the debtor’s Amended Disclosure Statement and set a hearing on confirmation of the debtor’s Plan of Reorganization. Both the Statement and the Plan classified the Harper and Goldberg claims as general, unsecured claims on a par with the trade accounts. At the hearing, appellant La Grand Steel Products Co. objected to the Plan’s treatment of the Harper and Goldberg claims. The bankruptcy court denied the objections and confirmed the Plan. La Grand appealed to the district court. Prosecution of the appeal was delayed while the bankruptcy court considered La Grand’s separate objections to the Harper and Goldberg claims (as opposed to the Plan). The court decided La Grand’s objections had merit and, in December 1983, amended its April 19, 1982 order to delete the description of Goldberg’s claim as nonsubordinated. The bankruptcy court further held that because under Oregon state law, payment of Harper’s and Goldberg’s claims by the insolvent corporation would be unlawful, Harper’s and Goldberg’s claims should be subordinated to those of the other unsecured creditors. Harper and Goldberg appealed to the district court.
*321 The district court consolidated Harper’s and Goldberg’s appeals with La Grand’s earlier appeal from the bankruptcy court’s confirmation of the debtor’s Plan of Reorganization. The district court reversed the orders of the bankruptcy court amending its April 19, 1982 order and subordinating Harper’s and Goldberg’s claims, concluding that Harper’s and Goldberg’s claims should be treated on a par with those of general unsecured creditors. In light of this ruling, the district court declared La Grand’s earlier appeal to be moot. La Grand timely appeals.
DISCUSSION

Appealability

Section 104(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, codified at 28 U.S.C. § 158, governs appeals from bankruptcy judges and district courts. Under 28 U.S.C. § 158(d), courts of appeals have jurisdiction of appeals “from all final decisions, judgments, orders, and decrees” of district courts reviewing decisions of bankruptcy courts. The standard of finality under § 158(d) is the same as that under former § 1293 which was superseded by § 158. In re 405 N. Bedford Dr. Corp., 778 F.2d 1374, 1377 (9th Cir.1985). The issue of finality “must follow ‘a pragmatic approach.’ ” In re Four Seas Center, Ltd., 754 F.2d 1416, 1418 (9th Cir.1985) (quoting In re Mason, 709 F.2d 1313, 1318 (9th Cir.1983)). When an order “finally determine[s] the discreet [sic] issue to which it is addressed,” and further bankruptcy court proceedings would not affect the scope of the order, it is immediately appealable. In re Four Seas Center, 754 F.2d at 1418; see also In re 405 N. Bedford Dr. Corp., 778 F.2d at 1377.
Two cases in which appeal from a subordination order was not allowed are instructive. In In re Martinez, 721 F.2d 262, 263 (9th Cir.1983), the bankruptcy appellate panel had affirmed the bankruptcy court’s order subordinating a claim, but had also remanded for further factual determinations. We held that the remand rendered the decision below interlocutory and not immediately appealable. Id. at 265. Similarly, in United States Department of Energy v. West Texas Marketing Corp., 763 F.2d 1411, 1413-14 (Temp.Emer.Ct.App.1985), the district court affirmed the bankruptcy court’s order holding that DOE’s claim “in any amount allowed” be subordinated. The bankruptcy judge gave the trustee sixty days to challenge the amount of DOE’s claim. Id. at 1414. Because the trustee might file an objection to the amount, further proceedings would be necessary, and the order was held to not be final. Id. at 1417.
In the case at bar, the district court order finally determined the question as to whether Harper’s and Goldberg’s claims should be allowed on a par with those of general creditors or whether they should be subordinated. No further proceedings on this issue are contemplated or necessary. The district court’s order is accordingly final and appealable under 28 U.S.C. § 158(d).

Standard of Review

Under 11 U.S.C. § 510(c), a bankruptcy court “may ... under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim.” The bankruptcy court exercises a broad range of equitable powers in deciding whether to subordinate claims. Pepper v. Litton, 308 U.S. 295, 303-11, 60 S.Ct. 238, 243-47, 84 L.Ed. 281 (1939); In re Holiday Mart, Inc., 715 F.2d 430, 432 (9th Cir.1983). The issuance of such equitable relief “is addressed to the sound discretion of the Bankruptcy Court, and the scope of review is accordingly limited to a determination of whether there was an abuse thereof.” In re Whitehead, 583 F.2d 1104, 1107 (9th Cir.1978); see also In re Holdiay Mart, 715 F.2d at 432. Conclusions of law, however, are reviewable de novo, and an exercise of discretion based on an erroneous conclusion of law can be freely overturned by an appellate court. See Shakey’s Inc. v. Covalt, 704 F.2d 426, 437 (9th Cir.1983).

*322
Equitable Subordination

Section 510(c), permitting a bankruptcy court equitably to subordinate claims, is essentially a codification of case law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 359, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6315. “[T]he bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.” Pepper, 308 U.S. at 308, 60 S.Ct. at 246. Subordination of a claim is appropriate when there is evidence of fraud, inequity, or unfairness. Id. at 305-07, 60 S.Ct. at 244-46; In re Westgate-California Corp., 642 F.2d 1174, 1177 (9th Cir.1981). A court must additionally find that the claimant’s conduct has harmed the the debtor or its other creditors, and must “take care not to subordinate claims where doing so will operate only to penalize the claimant.” Id. at 1178.
In the case at bar, no party alleges that Harper or Goldberg committed fraud on the debtor or any other wrongful acts, and the bankruptcy court found no evidence of alleged misconduct. In support of its argument for subordination, La Grand relies on Ninth Circuit case law holding that if a debtor’s payment for repurchased shares would be illegal under state law, this is sufficient to require subordination of the claims. See McConnell v. Estate of Butler, 402 F.2d 362 (9th Cir.1968).
In McConnell, employee shareholders of a corporation exchanged their stock for debentures of the company. Id. at 365. Interest and principal on the debentures were to be paid over a thirteen-year period. Id. Five years after the transaction, the company ceased making any payments on the debentures, and filed in bankruptcy soon thereafter. Id. At the time of the original transaction, the employee stockholders had no reason to believe the corporation was insolvent, and the insolvency was due to causes other than depletion of assets by the repurchase of the stock. Id.
When the debenture holders filed claims as creditors, the trustee objected. The referee overruled the trustee’s objections and ordered that the debenture claims be allowed on a parity with the claims of all other general unsecured creditors. Id. The district court sustained the referee’s order. Id.
On appeal, we reversed. Id. at 366-67. Under California law in effect at the time, a repurchase agreement was unenforceable if, at the time payment was to be made, a corporation was insolvent. See Cal. Corp. Code §§ 1705-1708 (repealed eff. Jan. 1, 1977). The court held that the “time for payment” was when assets were actually to be paid out of the corporation. 402 F.2d at 366. Since the corporation was bankrupt and payment to the debenture holders would be through the bankruptcy court, the corporation was insolvent at the time payment was to be made. Id. at 367. The repurchase agreement was therefore unenforceable. Despite the lack of evidence of any misconduct on the part of the debenture holders, the claims of the debenture holders were subordinated to the claim of other creditors. Id. McConnell was recently followed by another panel of this court in a case involving similar facts. See In re Hawaii Corp., 694 F.2d 179, 181 (9th Cir.1982).
The reasoning embodied in McConnell has been applied in other circuits. See In re Tumble Co., 339 F.2d 838, 841-43 (3d Cir.1964); Mountain State Steel Foundries, Inc. v. Commissioner, 284 F.2d 737, 742 (4th Cir.1960); Robinson v. Wangemann, 75 F.2d 756, 757-58 (5th Cir.1935); In re Fechheimer Fishel Co., 212 F. 357, 363-67 (2d Cir.1914); Reiner v. Washington Plate Glass Co., 27 B.R. 550, 551-52 (D.D.C.1982), remanded, 711 F.2d 414 (D.C.Cir.1983). The Fifth Circuit in Robinson explained the policy behind the doctrine:
A transaction by which a corporation acquires its own stock from a stockholder for a sum of money is not really a sale. The corporation does not acquire anything of value equivalent to the depletion of its assets, if the stock is held in the treasury, as in this case. It is simply a method of distributing a proportion of *323 the assets to the stockholder. The assets of a corporation are the common pledge of its creditors, and stockholders are not entitled to receive any part of them unless creditors are paid in full. When such a transaction is had, regardless of the good faith of the parties, it is essential to its validity that there be sufficient surplus to retire the stock, without prejudice to creditors, at the time payment is made out of assets. In principle, the contract between [the stockholder] and the corporation was executory until the stock should be paid for in cash. It is immaterial that the corporation was solvent and had sufficient surplus to make payment when the agreement was entered into. It is necessary to a recovery that the corporation should be solvent and have sufficient surplus to prevent injury to creditors when the payment is actually made. This was an implied condition in the [notes] accepted by [the stockholder].
75 F.2d at 757-58 (quoted with approval by Ninth Circuit in McConnell, 402 F.2d at 366).
The McConnell facts meet the other requirements for equitable subordination— that there be a showing of harm to the debtor or the other creditors, and that subordination not operate solely to penalize the claimant. Allowing a former stockholder to enforce a repurchase agreement against a bankrupt estate would clearly prejudice the debtor’s general creditors. And as discussed by the court in Robinson, any stock repurchase agreement is implicitly conditioned on the corporation’s continuing ability to pay. Creditors have first claim to a bankrupt’s assets, and a former stockholder, even though innocent of any wrongdoing, must yield to general creditors. Although the former stockholder’s right to payment is thereby diminished, one cannot conclude that the claimant has been “unfairly penalized.”
The question in the case at bar, then, is whether Oregon law prohibits a corporation from paying for repurchased shares when it is insolvent as did the California statute in McConnell. The relevant state statute is Or.Rev.Stat. § 57.035, which was amended in 1983. Prior to 1983, Or.Rev.Stat. § 57.035(5) provided: “No purchase of or payment for its own shares shall be made at a time when the corporation is insolvent or when such purchase or payment would make it insolvent.” (Emphasis added.) In 1983, § 57.035(5) was amended to delete the underlined references to “payment.” Two new subsections were also added, as follows:
(6) For the purposes of subsections (1) and (5) of this section, the effect of a corporation’s purchase of its own shares shall be measured as of the date money or other property is transferred or debt is incurred by the corporation or as of the date the shareholder ceases to be a shareholder of the corporation with respect to such shares, whichever is earlier.
(7) Indebtedness of a corporation incurred or issued to a shareholder in exchange for the shares of the corporation in accordance with this section shall be on a parity with the indebtedness of the corporation to its general unsecured creditors except to the extent such indebtedness is expressly secured or subordinated by agreement.
Or.Rev.Stat. § 57.035(6), (7).
Harper and Goldberg argue that the 1983 amendments clarified rather than changed the meaning of § 57.035. We disagree. The plain language of the pre-1983 statute explicitly requires solvency at both the time of purchase and the time of payment.
Harper and Goldberg alternatively urge that the post-1983 statute should be applied. We disagree. United States v. Marxen, 307 U.S. 200, 202-03, 59 S.Ct. 811, 812-13, 83 L.Ed. 1222 (1939), involved a statute conferring priority in bankruptcy upon debts owed by a bankrupt to the United States. The federal government had acquired the claim in question by an assignment which occurred after the petition in bankruptcy had been filed. Id. at 201-02, 59 S.Ct. at 812. The Court, disallowing the priority because the claim was *324 transferred to the government after the filing of the petition, stated that “the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition in bankruptcy.” Id. at 207, 59 S.Ct. at 815. Application of this principle in the case at bar compels application of the pre-1983 version of the Oregon statute.
Under the statute, payment of the Harper and Goldberg claims would be illegal if the debtor were insolvent at the time of payment or if the payment would render the debtor insolvent. See Or.Rev.Stat. § 57.035(5) (pre-1983 version). Accordingly, the date upon which to focus is the date on which payment is due. Any payments coming due after the debtor became insolvent should be subordinated under the rationale set out in McConnell and explained in Robinson. However, if the debtor was in fact solvent when some or all of the payments to Harper and Goldberg were due, and failed to make payment despite solvency, to the extent of such payments, the debts to Harper and Goldberg should not be subordinated. Insolvency occurring subsequent to the debt’s due date may render the debtor unable to pay but it does not make the debt illegal within the meaning of the statute.
Because of ambiguities in the record, we are unable to determine whether the debtor was solvent or insolvent on July 1, 1980 when payment on the Goldberg note was due, and through 1981 when installment payments on the Harper debt were due. See Transcript of September 6, 1983 Hearing Before Bankruptcy Judge at 60, Supplemental Excerpt of Record for Appellee Herman Goldberg at 10 (suggesting that the debtor was solvent throughout this period).[1] We note that the debtor did not file the chapter 11 petition in bankruptcy until March 1982.
We remand the case to the district court with instructions to remand to the bankruptcy court for determination in the first instance whether the debtor was solvent on the dates payments on the Harper and Goldberg debts were due. To the extent that the debtor was solvent, the debts should not be subordinated and should instead be treated on a par with those of other creditors.

Attorney’s Fees

In its brief, La Grand seeks attorney’s fees for this appeal pursuant to the common benefit rule. Title 11 U.S.C. § 503 provides that attorney’s fees may be awarded after notice and a hearing. Bankruptcy Rule 2016 requires that a person seeking compensation file a detailed application with the court. If, on remand, the bankruptcy court rules in favor of La Grand, it should proceed to make the initial determination as to La Grand’s request for attorney’s fees.
We REVERSE and REMAND to the district court with instructions to REMAND to the bankruptcy court for further proceedings.

. But see District Court Opinion at 10, Excerpt of Record for Appellant La Grand Steel Products Co. at 68. The district court quoted the Or.Rev.Stat. definition of "insolvent” as "the inability of a corporation to pay its debts as they become due in the usual course of business,” and stated: “The record contains ample evidence that debtor was able to pay neither Goldberg nor Harper nor various other creditors as its debts became ‘due in the usual course of business.’ ” Id. It is not clear from this statement precisely what dates the district court referred to when it found the debtor to be insolvent.