944 F.2d 909
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re PARKSIDE BUILDING CO.
Robert STEINBERG, Bankruptcy Trustee, Plaintiff-Appellee,
v.
Richard C. HEDREEN, Elizabeth Hedreen, Defendant-Appellant.
 No. 90-35419.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1991.
Decided Sept. 18, 1991.
As Amended Nov. 6, 1991.
 
 Before WALLACE, Chief Judge, O'SCANNLAIN, Circuit Judge, and BURNS,* District Judge.
 MEMORANDUM**
 * Richard Hedreen is a Seattle builder and developer. He owns 100% of the stock in two corporations, Parkside Building Co. ("Parkside") and the R.C. Hedreen Company ("RCHC"). Sometime in the early 1980's, Hedreen, in his personal capacity, obtained a long-term lease for a parcel of land in West Seattle. On this parcel Hedreen envisioned building a residential and retail complex called Jefferson Square. In preparation for construction, Hedreen obtained a construction loan from SeaFirst Bank.
 In 1985, Hedreen incorporated Parkside to act as general contractor on the Jefferson Square Project. Hedreen entered into a "guaranteed-cost-plus-fee" contract with Parkside for construction of the project. The final contract amount agreed upon by the parties was $12,409,460.99.
 Hedreen and his two corporations managed their financial affairs pursuant to a "global cash management policy," under which funds were freely transferred among the various entities as needed to pay the obligations of any particular entity. Hedreen established this cash management policy to minimize interest expenses and to maximize return available on cash or capital.
 The construction contract between Hedreen and Parkside entitled Parkside to a monthly draw against the contract. However, under Hedreen's cash management policy, many of the funds did not go directly from Hedreen to Parkside. Rather, SeaFirst would deposit monthly draws into one of Hedreen's personal accounts. The funds actually used to pay Parkside's construction costs, however, came from RCHC accounts or lines of credit.
 The Jefferson Square Project proved to be a disaster. Cost overruns were frequent. Hedreen had a dispute with a subcontractor which, after arbitration, was reduced to a one million dollar judgment against Hedreen. A few days following entry of this judgment, Parkside dissolved. At the final meeting of Parkside's board of directors, the directors noted that Hedreen owed Parkside approximately $2.4 million, the remaining balance on the construction contract. Parkside, on the other hand, owed Hedreen approximately $3.1 million "primarily attributed to working capital loans made by [Hedreen] to [Parkside]." These amounts were purportedly "offset." Parkside was left with no funds to pay state sales tax on the Jefferson Square Project or the subcontractor's judgment.
 An involuntary Chapter 7 petition against Parkside was filed shortly thereafter. An accountant hired by the bankrupt estate's trustee found that Hedreen owed Parkside an adjusted amount of about $4.5 million, and that Parkside owed RCHC about $6.2 million. The trustee filed an adversary proceeding to invalidate the purported setoff of the two debts and to recover the $4.5 million from Hedreen. The trustee also filed an amended complaint seeking, inter alia, to subordinate Hedreen's claims against Parkside.
 The trustee moved for summary judgment on the setoff issue. Hedreen opposed the motion on the grounds that there was no "setoff" because he had already repaid his debt to Parkside. Hedreen also challenged the bankruptcy court's authority to enter a final money judgment. The bankruptcy court rejected these contentions and ultimately entered final judgment against Hedreen in the amount of $4 million.
 The bankruptcy court then conducted a bench trial on the question of whether Parkside's debts owed to Hedreen should be subordinated to the debts of Parkside's other creditors. Following trial, the bankruptcy court found that, while there had been no fraudulent conveyance by Hedreen, his conduct in relation to Parkside had been inequitable. Accordingly, the court exercised its equitable discretion in subordinating Hedreen's claims against Parkside to those of other creditors. In addition, the court found Hedreen liable for sales tax owed by Parkside for change orders in the contract.
 Hedreen appealed these decisions to the United States District Court for the Western District of Washington, which affirmed the bankruptcy court in all respects. This appeal followed.
 II
 Hedreen maintains that the bankruptcy court lacked jurisdiction to enter a money judgment against him. The authority of the bankruptcy court to issue a final judgment in this case depends on whether the matter is classified as a "core" or "noncore" proceeding. See 28 U.S.C. § 157(b)(1). In core proceedings, a bankruptcy court may enter final judgment, while in noncore proceedings, the bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court. Id. § 157(c)(1).
 Even if this were a noncore proceeding, we would not reverse here. We have held that if a district court can give a bankruptcy court's findings plenary review, initial proceedings can be held before the bankruptcy court. In re Castlerock Properties, 781 F.2d 159, 162 (9th Cir.1986); see also In re Thomas, 765 F.2d 726, 929 (9th Cir.1985). Here, the district court was reviewing a bankruptcy court's grant of summary judgment, a review which by law is conducted de novo. See In re Pioneer Technology, Inc., 107 Bankr. 698, 700 (9th Cir. BAP 1988); see also In re United Energy Corp., 102 Bankr. 757, 760 (9th Cir. BAP 1989) ("Findings of fact made in summary judgment proceedings are not entitled to the 'clearly erroneous' standard of review because the trial court has not weighed the evidence in the conventional sense."). Our review of the record reveals that the district court's review was plenary. Thus, the de novo review [would have] "effectively cured" the bankruptcy court's erroneous entry of final judgment. Cf. In re Eastport Associates, No. 89-55700, slip op. 7469, 7481 n. 5 (9th Cir. June 14, 1991) (district court reversal of bankruptcy court decision effectively cured erroneous entry of judgment).
 III
 Hedreen contends that summary judgment was improperly granted because his debt to Parkside had already been paid. The transfers of money to Parkside by RCHC, Hedreen reasons, were intended to be payments on his debt. The trustee counters the transfers by RCHC to Parkside were "working capital loans" and thus the purported setoff between Hedreen and Parkside was impermissible under section 553 because the debts were nonmutual. The dispositive question, then, is whether the nature of the transfers between RCHC and Parkside can be decided as a matter of law.
 There is persuasive evidence that the transfers from RCHC were intended to be loans, creating a debtor/creditor relationship between the two entities. Parkside's ledgers, the March 1988 minutes of the Parkside board of directors, and the March 1988 minute of the RCHC board of directors all suggest that the transfers were loans. Moreover, it is permissible to infer that a transfer of funds from an entity not contractually obligated to do is a loan.
 However, there is also evidence suggesting that the transfers were intended to be payments made on Hedreen's account. See Thrifty Supply Co. of Seattle v. Deverian Builders, Inc., 3 Wash.App. 425, 475 P.2d 905, 907 (1970) ("Payment is established only with the receipt of funds by the creditors, coupled with an intention on behalf of both parties that the funds received constitute payment.... [T]he intention of the parties is a question of fact...."). Parkside's books for 1986 were adjusted to reflect the transfers as payment rather than loan. Many of the transfers comport with Hedreen's obligation to make monthly payments to Parkside. Moreover, just as the record lacks any written confirmation that the transfers were payments, the record also lacks any written memoranda memorializing a loan transaction. Finally, Hedreen and many other employees, officers, and directors of Parkside averred that the transfers were intended as payment. While the testimony of these individuals may be viewed as self-serving, we cannot say that it is so implausible, particularly in light of the other evidence in this case, to warrant entry of judgment for the trustee as a matter of law. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("if the factual context renders respondents' claim implausible ... respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary"). Hedreen has satisfied this burden here.
 Accordingly, we reverse the grant of summary judgment for the trustee and remand for trial to determine the nature of the transfers between RCHC and Parkside.
 IV
 Hedreen also appeals the bankruptcy court's subordination of his claims against Parkside. While we must accept the bankruptcy court's findings of fact unless clearly erroneous, see Eastport, slip op. at 7485, we review the bankruptcy court's equitable subordination of claims for an abuse of discretion, see In re Universal Farming Indus., 873 F.2d 1334, 1337 (9th Cir.1989).
 The bankruptcy court's authority to subordinate claims is found at 11 U.S.C. § 510(c). The bankruptcy court exercises broad equitable powers in deciding whether to subordinate claims. In re Holiday Mart, Inc., 715 F.2d 430, 432 (9th Cir.1983). However, equitable subordination may be imposed only as a compensatory, not punitive, measure. In re Westgate-California Corp., 642 F.2d 1174, 1178 (9th Cir.1981).
 This court has identified three prerequisites to the imposition of equitable subordination. See Universal Farming, 873 F.2d at 1337. First, the claimant against whom subordination is sought must have engaged in inequitable conduct.[1] Id. Second, the misconduct must result in injury to competing claimants or in an unfair advantage to the claimant. Id. Finally, the subordination may not be inconsistent with the Bankruptcy Code. Id. A corollary to these three rules is that a claim should be subordinated only to the extent necessary to offset the harm caused by the inequitable conduct. See Westgate-California, 642 F.2d at 1178; Pacific Express, 69 Bankr. at 116.
 The bankruptcy court's conclusion that Hedreen's conduct was inequitable appears to rest in large part upon its earlier determination that Hedreen had not fully paid its obligations to Parkside. The fact that creditors of Parkside went unpaid, standing alone, does not justify the subordination of Hedreen's claims. See, e.g., Norhawk Investments, Inc. v. Subway Sandwich Shops, Inc., --- Wash.App. ----, 811 P.2d 221, 223 (1991) ("harm [to creditors] alone does not create corporate misconduct ... [i]t is ... well established that the purpose of a corporation is to limit liability") (quotation omitted). Likewise, Hedreen's salary as vice-president of Parkside, while suspiciously large, was not sufficiently excessive as to warrant subordination without more. Accordingly, because we reverse the bankruptcy court's conclusion that Hedreen did not pay his obligations as a matter of law--an apparent key factor in its decision to subordinate--we also reverse the order subordinating Hedreen's claims.
 V
 Finally, Hedreen contends that the district court erred in concluding that he was contractually obligated to pay state sales tax on his change orders in excess of the contractual cap on cost reimbursement. Hedreen did not contest this issue in the pretrial order. A pretrial order will be modified only to prevent manifest injustice. Fed.R.Civ.P. 16(e); Malhiot v. Southern California Retail Clerks Union, 735 F.2d 1133, 1137 (9th Cir.1984). We do not find such injustice here. We affirm the decision of this bankruptcy court.
 Each party shall bear its own costs.
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 *
 The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This dispositoin is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Where the claimant/creditor is an insider, his or her dealings with the debtor will receive greater scrutiny than that of a noninsider. In re Pacific Express, Inc., 69 Bankr. 112, 116 (9th Cir. BAP 1986)