**In the Matter of PANCHO'S INTERNATIONAL, INC., Debtor.**

**EDWIN PECK, JR. CONSTRUCTION, INC., Plaintiff,**

v.

**PANCHO'S INTERNATIONAL, INC., Defendant.**

**Bankruptcy No. 80–1309.
Adv. No. 81–164.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 3, 1982.

Jeffry Jontz, Orlando, Fla., for plaintiff.

Don M. Stichter, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW MEMORANDUM OPINION AND FINAL JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization and the matter under consideration is an Objection to Claims filed by Edwin Peck, Jr. Construction, Inc. (Peck), by which Peck seeks to have disallowed the claims of John Mazzola, Frank Cezare and Robert Burke. In addition, Peck filed a Second Amended Complaint against Russell Mazzola, individually, and Pancho's International, Inc., the Debtor in this Chapter 11 case. Count I of the Complaint seeks to disallow Russell Mazzola's claim in the amount of $265,000 and, in the event that the claim is allowed, Count II seeks to subordinate that claim to the claims of Peck and other unsecured creditors. Prior to the filing of the objection and the Complaint, Peck had filed an Application to Subordinate the claim of Robert Burke. Peck evidently has elected not to pursue the Application in favor of the matters now under consideration and as such, it will be denied. Because of the complexity and similarity of the issues presented, this Final judgment will dispose of both the Objection and the Complaint.

Based upon the evidence adduced at trial, the Court makes the following findings of fact and conclusions of law:

Since its date of incorporation in June of 1977, the Debtor, Pancho's International, Inc. (Pancho's) has been operating Mexican food restaurants in several shopping malls located in Florida. The Plaintiff, Peck, furnished labor and material for the construction of the Gainesville, Bradenton and Pinellas Park restaurants.

On August 1, 1979, John Mazzola and his brother, Russell, entered into a Stock Subscription Agreement with Pancho's whereby the Mazzolas agreed to loan the corporation up to $250,000 and to purchase 15,000 of the 60,000 authorized shares of stock at a par value of $.10 per share. That agreement

also gave the Mazzolas an option to purchase another 4,500 shares at par value in the event the Debtor was successful in repurchasing those shares from existing stockholders. As a matter of fact, because 59,651 of the 60,000 authorized shares were issued and outstanding in August of 1979, it was essential for the Debtor to repurchase shares in order to comply with the Subscription Agreement. To accomplish this task, the Debtor, Russell Mazzola and several stockholders entered into an Escrow Agreement on August 10, 1979 which provided for the purchase of 12,000 shares of the stock held by Robert Burke for $14,500 in cash and a promissory note in the amount of $120,000. Based upon the balance due under that agreement, Mr. Burke has filed a claim in the amount of $114,000.

Pursuant to the Subscription Agreement, John Mazzola loaned $25,000 to the Debtor. Those monies were used for constructing and equipping the mall restaurants. On September 28, 1979, Russell Mazzola loaned the Debtor $210,000. In return, the Debtor executed three promissory notes in the amount of $70,000 each, payable to Russell Mazzola. These notes were secured by all of the fixtures, inventory, equipment and the Debtor's leasehold interest in several of the mall restaurants. These funds were also used to construct and equip the restaurants. On April 14, 1980, Russell Mazzola loaned the Debtor an additional $55,000 secured in the same fashion as the three previous notes. On October 9, 1979, Frank Cezare loaned the Debtor $25,000. The Debtor used those monies to pay various bills and for expenses related to the opening of the new restaurants. It is also apparent that by October 12, 1979, the Debtor's former management had resigned and Russell Mazzola, John Mazzola and Frank Cezare had become officers and directors of the corporation.

It is important to note that these alleged loans did not occur at the time of incorporation, but rather two years after Pancho's came into existence. However, it is equally important to note, and it is without dispute that without these loan funds, three of the restaurants could not have been completed and opened. Indeed, in the absence of these funds, the Debtor would have met a much earlier demise.

Peck contends that the purported loans by John Mazzola, Russell Mazzola and Frank Cezare were, in fact, contributions to capital. Under this line of reasoning the claimants would enjoy only an equity position and, therefore, no debt would exist upon which a claim could be based. As to Russell Mazzola, Peck argues in the alternative, that, even assuming that his transactions could be characterized as loans, they should be equitably subordinated to the claims of other creditors pursuant to § 510(c) of the Bankruptcy Code.

 Taking these contentions seriatim, it is well to state at the outset that the determination of whether a particular transaction is a loan or capital contribution involves a factual inquiry which requires the Court to consider several well established factors, including presence or absence of undercapitalization; the purpose of the purported loan; the proximity of the loan to the formation of the corporation and to the filing of bankruptcy and whether the so-called loan occasioned the filing of bankruptcy. *In re Mobile Steel Co.,* 563 F.2d 692 (5th Cir.1977); *Matter of Multiponics,* 622 F.2d 709 (5th Cir.1980); *In re Skybowl* No. 64–79–Orl–BK (Bkrtcy.M.D.Fla. June 10, 1966), *aff'd sub nom. DeMet v. Harralson,* 399 F.2d 35 (5th Cir.1968). The Court when called upon to consider this issue, may also inquire whether the person making the loan was in a position of control in the corporation with the ability to dictate the terms of the transaction, *In re Fett Roofing & Sheet Metal Co.,* 438 F.Supp. 726, 729 (E.D.Va. 1977), *aff'd.,* 605 F.2d 1201 (4th Cir.1979); whether the paid-in capital was unreasonably small in view of the nature and size of the business; *In re Maders Store for Men, Inc.,* 77 Wis.2d 578, 254 N.W.2d 171 (1971); and whether the facts demonstrate an intent to undercapitalize, *In re Fett Roofing & Sheet Metal Co., supra* at 730; *In re Brunner Air Compressor Corp.,* 287 F.Supp. 256 (N.D.N.Y.1968).

■ At this juncture, it is important to note that at the time of all but one of the loan transactions neither of the Mazzolas nor Cezare was an officer, director or shareholder of the corporation. There was no evidence presented that these individuals were able to control the terms of the transaction. Moreover, Russell Mazzola testified that he had no knowledge of the initial capitalization position of the corporation and that because of depressed economic conditions, banks simply were not financing the construction of new restaurants. Again, it must be emphasized that any inability to obtain financing did not occur at the time of initial capitalization but two years later.

The evidence concerning the amount of paid-in capital consisted of an unaudited financial statement for an eight month period ending March 31, 1979 and the testimony of the certified public accountant who prepared it. The financial statement reflects the capital paid, in excess of par value, to be $337,493. Of that amount, $114,908 represents a balance owed by three stockholders for their initial investment in the company. One of these stockholders owes $93,200 which is collateralized by a first mortgage on income producing property. Thus, it is clear that the amount of paid-in capital is actually $222,585. In any event, no evidence was adduced to show that the amount of paid-in capital was insufficient to support the business at the time of capitalization.

Furthermore, at the trial it was well established that the loans were not the cause of bankruptcy and that they were not made in bad faith in regard to other creditors. Rather, the lenders were interested in assuring the success of the corporation, while, at the same time, reducing their risk of investment. Therefore, the Court is satisfied that these transactions were loans, and not capital contributions, and that the respective claims should be allowed.

This leaves for consideration the question of whether the claim of Russell Mazzola should be equitably subordinated to the claims of other creditors as permitted by § 510(c) of the Code.

■ Regarding the burden of proof, the party seeking subordination has the burden of going forward with enough evidence to overcome the prima facie validity of a proof of claim. Only when the party seeking to subordinate meets this burden does the burden of showing the good faith and fairness of the transaction fall upon the claimant. *In re Midtown Produce Terminal Inc.,* 599 F.2d 389, 394 (10th Cir.1979); Bkrtcy Rule 301(b).

Section 510(c) provides in pertinent part as follows:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and hearing, the court may

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

In describing the import of this section, the legislative history provides as follows:

It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct, or the claim is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security from the debtor.

124 Cong.Rec. H. 11,095 (Sept. 28, 1979); S. 17,412 (Oct. 6, 1978).

■ From the legislative history it is clear that § 510(c) codifies existing case law on the subject of equitable subordination. Although the Act did not contain a companion section, the authority of the bankruptcy court to subordinate claims on equitable grounds was first announced in *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). *See,* Herzog and Zwei-

bel, *The Equitable Subordination of Claims in Bankruptcy,* 15 Vand.L.R. 83 (1961). Subsequent cases have further refined this authority. *See, In re Branding Iron Steak House,* 536 F.2d 299 (9th Cir.1976); *In re Mobile Steel Co., supra.* Recently, the test for equitable subordination enunciated in *In re Mobile Steel Co., supra,* has been rearticulated:

(i) The claimant must have engaged in some type of inequitable conduct. (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Matter of Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980). With the adoption of the Code and § 510(c), it is clear that (iii) of the above test will rarely, if ever, come into play.

Although a literal reading of *Mobile Steel* and *Fett Roofing* provides some support for the proposition that undercapitalization is itself an instance of inequitable conduct, a careful study of the decisions reveals that fraud and mismanagement were present in both cases. In fact, the majority of courts have held that subordination is inappropriate when undercapitalization is unaccompanied by inequitable conduct. *Pepper v. Linton, supra; In re Brunner Air Compressor Corp., supra.* As discussed above, there is no evidence that the paid-in capital was insufficient to support the business when the Debtor was capitalized. However, even assuming, for the sake of argument that the Debtor was undercapitalized from its inception, the record in this case is devoid of any evidence of fraud or mismanagement, and this Court refuses to equate undercapitalization with inequitable conduct. This is so because the term "undercapitalization" is, at best, a nebulous concept. In addition, "subordination without inequitable conduct would have a chilling effect on corporate investment." *Equitable Subordination & Trade Creditors,* 61 B.U.L.Rev. 433, 439 (1981). As Collier notes:

So long as there has been no abuse of position and there has been no effort nor, indeed, any success in securing an unfair advantage, creditors have no reason to look upon valiant efforts to save a financially troubled corporation with anything but approval.

3 *Collier on Bankruptcy,* ¶ 510.04 at 510–13 (15th ed. 1981).

Having considered all the facts and circumstances surrounding the loan transactions in question and having heard the testimony of the witnesses, this Court is satisfied that the respective claims of John Mazzola, Russell Mazzola and Frank Cezare should be allowed as filed. It is clear that these transactions were, in fact, bona fide loans which were not tainted by any inequitable conduct.

Finally, Peck argues that the claim of Robert Burke should be disallowed because the agreement for the repurchase of his stock was made at a time when the corporation had no surplus, in violation of Fla.Stat. § 607.017 and § 607.201. However, the evidence produced at trial showed that approximately one month prior to the agreement, the corporation had an unreserved surplus of $317,330. Peck also attempts to argue in its post-trial memorandum of law that the repurchase of, or repayment for, corporate shares cannot be accomplished when a corporation is insolvent or if the payment would occasion insolvency. Fla.Stat. § 607.017(4). However, since no evidence was presented on this issue at trial, it is obvious that Peck has not met its burden of going forward and, therefore, the claim of Robert Burke shall be allowed as filed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that judgment be, and the same hereby is, granted in favor of the Defendants, Pancho's International, Inc. and Russell Mazzola, and against the Plaintiff, Edwin Peck Jr. Construction, Inc., and the complaint of the Defendant be, and the same hereby is, dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the Application to Subordi-

nate the claim of Robert Burke filed by Edwin Peck Jr. Construction, Inc. be, and the same hereby is, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the Objection to Claim of John Mazzola, Frank Cezare and Robert Burke be, and the same hereby is, overruled and said claims shall be allowed as filed.