**In re A.F. WALKER & SON, INC., Debtor.**

**Oiva R. ANDERSON, Plaintiff,**

v.

**A.F. WALKER & SON, INC., Victor Dahar, Trustee, Defendants.**

**Bankruptcy No. 84–134.**

United States Bankruptcy Court, D. New Hampshire.

Feb. 11, 1985.

---

5. *Bobroff v. Continental Bank,* 43 B.R. 746 (E.D. Pa.1984); 1 *Collier on Bankruptcy* ¶ 3:01[1][e]

(15th ed. 1983).

Bertrand Zalinsky, Manchester, N.H., for plaintiff.

Terrie Harman, Portsmouth, N.H., for debtor.

Victor Dahar, Manchester, N.H., Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case was tried before the court on a dispute arising under an assertion by the plaintiff Oiva R. Anderson, of various rights as a secured creditor under a recorded mortgage lien on essentially all of the machinery, equipment, and other assets of the debtor A.F. Walker & Son, Inc. The dispute first arose in the context of a Chapter 11 reorganization petition with the debtor as a debtor-in-possession defending against the Anderson claim. During the progress of the trial the proceedings were converted to a Chapter 7 liquidation, and the debtor's position was taken over and pursued by the trustee in bankruptcy.

The original pleadings raised issues regarding the use of cash collateral and other matters that are now rendered moot by the conversion of the proceedings and the termination of business operations. However, there remains for decision the question of whether Anderson has an enforceable security interest in the assets of this estate. This issue was raised in one of the responsive pleadings filed by the then debtor-in-possession, as a "Cross Complaint To Determine Secured Status, Void Preference, Set Aside Fraudulent Transfer and Subordinate Claim" filed on May 16, 1984.

The attack attempting to avoid preference and to set aside fraudulent transfer requires little discussion. The preference issue is tied into the question of the validity of the secured claim, which will be discussed below. The setting aside of the transfer in question as a fraudulent transfer, to the extent that it is asserted under § 548 of the Bankruptcy Code, is legally insufficient in that that statute is limited to transactions occurring within one year of the bankruptcy filing. It is clear that in this instance the transfer in question occurred more than one year prior to the filing.

To the extent that the fraudulent transfer attack is based upon RSA 545:5, New Hampshire Statutes, as available to a trustee in bankruptcy pursuant to § 544 of

the Bankruptcy Code, the attack is not limited to a one year period. However, that attack also must fail inasmuch as the evidence, as discussed below regarding the remaining issues, is insufficient to support a finding in the statutory language that the debtor after the transfer was left with "property remaining in his hands after the conveyance [as] an unreasonably small capital."

This leaves for decision by the court what in fact is the heart of the trustee's attack upon this transaction, i.e., that Anderson as the former sole stockholder of the debtor corporation obtained his security interest in the assets of the debtor in part by the forgiving of an alleged $66,000.00 "debt" owing to him from the corporation which the trustee contends was not a true debt. The trustee contends the "loans" supporting the Anderson claim should be either determined to be a contribution to capital or in any event equitably subordinated to the claims of other creditors.

The facts establish that the debtor has been in operation in its particular business for some 100 years. The debtor corporation was acquired by Anderson in 1972 and he operated it until the transaction in question occurring July 30, 1982. On that date Anderson sold all his stockholder interest to one David H. Tousignant, under a complicated transaction in which Tousignant after acquiring control of the corporation caused the debtor to join in a promissory note obligation to Anderson totalling $90,-200.00, only $12,000.00 of which obligated Tousignant individually, and under which the debtor corporation granted Anderson a security interest in essentially all its assets to protect the entire $90,200.00 obligation thus undertaken.

As consideration to support the foregoing obligation Anderson relies on his "forgiveness" of a $66,000.00 obligation owing to him from the corporation, together with certain undertakings not to compete with the debtor corporation and to serve as a consultant for a one-year period pursuant to the stock sale transaction. Although not set up as an asset sale, the parties never-theless did give a bulk sales notice pursuant to the Uniform Commercial Code covering this transaction. The security interest granted Anderson was also properly perfected by notice-filing under the Uniform Commercial Code.

The $66,000.00 obligation arose from a series of advances made by Anderson to the corporation during the 1975–1982 period. The documentation with regard to these advances was very sketchy in the corporate records. On balance, considering the testimony and the credibility of the witnesses, the court concludes that (1) Anderson did in fact make advances during that period in excess of this amount; (2) that the corporation repaid a number of these advances during the period in question, and (3) that as of July 30, 1982 the net balance "owing" to Anderson was in fact $66,000.00.

The real question is whether this purported debt owing to Anderson from his solely-owned corporation can be recharacterized in a bankruptcy court as in economic fact a contribution to capital, as opposed to a true loan, or alternatively whether it can be equitably subordinated to the claims of the general unsecured creditors involved in this case. If either ground exists, there would be no consideration to support the secured claim, at least to the extent of the $66,000.00, and the trustee's attack would prevail even though as indicated above he cannot rely upon the specific avoiding powers granted by §§ 544 and 548 of the Bankruptcy Code.

The court was presented with voluminous testimony and evidence regarding Anderson's conduct and activities during the 1975–1982 period, as well as that of Tousignant in conducting the debtor's operations from July 30, 1982 until the bankruptcy filing on April 9, 1984.

This evidence indicates that the debtor had a series of net operating loss years during the late 1970's and that a good portion of the $66,000.00 advances, if not all of that amount, came from bonuses that the corporation paid Anderson during those years, which he immediately advanced back

to the corporation. The evidence also establishes that the corporation had cash flow problems sporadically, apparently due to the lack of sufficient working capital, and that these problems reappeared and in fact existed immediately before the sale of the stock to Tousignant. The evidence does not establish however that the company was ever insolvent in the asset-liabilities sense at any time prior to or at the time of the stock sale.

While disposed to view Anderson's actions and intent with special scrutiny, considering his status as an insider, the court concludes on the basis of all the evidence that Anderson in fact expected his advances to be paid back by the company at some time in the future, without "bankrupting" the company or otherwise prejudicing the rights of any unpaid creditors. Apart from questions of intent, the objective facts also establish that the company in fact was operated successfully until the time of the stock transfer; that Tousignant was able to operate the company successfully for some two years after he acquired the same; that all unpaid creditors as of July 30, 1982 were in fact paid off, except for two minor amounts, in the ordinary course of operations prior to bankruptcy; and that the filing of bankruptcy was more due to Tousignant's mismanagement of a dispute with the Internal Revenue Service than to any causes clearly apparent in 1982 for which Anderson should bear any continuing responsibility.

Anderson argues that recharacterization of loans as capital contributions, or application of the equitable subordination doctrine, can only occur in the bankruptcy court when the evidence establishes specific and actual misconduct on the part of the corporate insider, citing in that regard the cases of *In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir.1977), *In re Rego Crescent Corp.*, 23 B.R. 958, 7 CBC2d 713 (Bkrtcy. EDNY1982); and *In re Sepco, Inc.*, 36 B.R. 279, 10 CBC2d 474 (Bkrtcy.S.D.1984). Anderson also contends that these cases establish that the recharacterization of a loan as in economic reality a capital contribution can only occur when the court is dealing with a question of the *initial capitalization* of the company in question.

For purposes of the present decision, the court is not required to "cross all the bridges" laid before it by Anderson's trial memorandums. The various bankruptcy and appellate courts have had a very difficult time trying to rationalize the standards applicable for recharacterization or equitable subordination in this context. Even within the same circuit, the indications as to whether actual misconduct is required, and whether only the initial capitalization stage is relevant, have provoked inconsistent statements at differing times. See, e.g., *Arnold v. Phillips*, 117 F.2d 497 (5th Cir.1941); *Matter of Mobile Steel Co.*, supra; *Matter of Transystems Inc.*, 569 F.2d 1364 (5th Cir.1978).

It is sufficient for present purposes to note that the evolving standard in this area requires as a minimum that the following be shown to support recharacterization or equitable subordination: (1) The insider-claimant was in a position to, and did, dominate the affairs of the debtor corporation; (2) that at the time of the transaction in question the insider was aware of financial conditions and problems, of which the general unsecured creditors were not generally aware, which made it unrealistic to believe that the "debt" in question would be paid off within any specific time frame as a true debt, as opposed to a further risk-investment in the company; (3) that objectively the ultimate repayment of the "debt" in question was dependent upon a return to profitability by the company or other substantial "turn-around" in its business operations; and (4) that to give such an insider-claimant on such facts equal status as a "creditor" would be to give the insider an "unfair advantage" over other creditors who existed at that time and still remain unpaid in the bankruptcy proceeding. Cf. *Matter of Transystems Inc.*, supra; *In re Washington Plate Glass Co.*, 27 B.R. 550, 8 CBC 2d 707 (D.C.1982); *In re V. Loewer's Gambrinus Brewery Co.*, 167 F.2d 318, 319 (2nd Cir.1948). Courts do

continue to talk however in terms of requiring a showing of actual misconduct on the part of the insider without explaining whether an "unfair advantage" as set forth above is or is not equivalent to their concept of the required misconduct. See, e.g., *Matter of Pancho's International Inc.*, 26 B.R. 5 (Bkrtcy.M.D.Fla.1982); *In re Omega Lithographers, Inc.*, 17 B.R. 753 (Bkrtcy. M.D.Pa.1982).

Considerable light is shed on this thorny area of bankruptcy law in two recent law review articles: Chaitman "The Equitable Subordination Of Bank Claims" 39 Business Lawyer 1561 (August 1984); Cohn, "Subordinated Claims: Their Classification And Voting Under Chapter 11 Of The Bankruptcy Code", 56 Am. Bk'y Law Journal 293, 300–301 (October 1982). Compare also the approach taken by Bankruptcy Judge Votolato in his recent decision in *In re Labelle Industries, Inc.*, 44 B.R. 760 (Bkrtcy.R.I.,1984).

■ Even under the foregoing evolving standard, which does not require a showing of "actual misconduct" in the traditional sense, the trustee in the present case has failed to establish sufficient grounds for recharacterizing the debt or otherwise equitably subordinating the claim. The evidence supports the first factor listed above but does not support any of the other requisite factors for such action. The court also notes that there is some evidence that outside lending institutions were lending money to the debtor corporation during the same period in which the insider-claimant was advancing funds to the company. This has been considered a fact tending to support characterization of such advances as true debt in the circumstances. See *Matter of Transystems Inc.*, 569 F.2d at 1369.

Since all parties have treated this proceeding as an adversary proceeding for the determination of the validity of a secured claim, and the matter was tried as such, the plaintiff Oiva R. Anderson shall submit a final judgment in accordance with this opinion for entry by the court within one week of the date hereof.