**In re MICRO–PRECISION
TECHNOLOGIES,
INC., Debtor.**

**No. 02–10200–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

Nov. 25, 2003.

Jennifer Rood, Esq., Backus, Meyer, Solomon & Rood, Manchester, NH, for Debtor.

John Silbermann, Esq., Deborah S. Barrett–Smith, Esq., Washington, DC, for the U.S. Small Business Administration.

Laura Carroll, Esq., Burns & Levinson, Boston, MA, for Etang Chen and Chun–Ching Chen.

Yiping Du, Esq., Cambridge, MA, for H.F. Huang.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the United States Small Business Administration's (the "SBA's") Motion for Disallowance of H.F. Huang Claim or, in the Alternative, for Recharacterization of the Huang Claim as a Junior Preferred Equity Interest (the "Motion") (Court Doc. 39) and the supplement thereto (the "Supplemental Motion")

(Court Doc. 88) (collectively, the "SBA Motions") and Micro–Precision Technologies, Inc.'s ("MPT–NH's" or the "Debtor's") Objection to Claim No. 3 of the SBA (the "Objection to Claim") (Court Doc. 75). At hearings held January 8 and February 3, 2003, the Court heard the testimony of the parties [1] and thereafter took the matters under submission. Based upon the record before it and for the reasons set forth below, the Court denies the SBA Motions and overrules in part and sustains in part the Debtor's Objection to Claim.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

Dr. Etang Chen and Chun–Ching (Chris) Chen bought the Debtor, a defense industry microchip manufacturer, in 1987, when it was incorporated in Massachusetts ("MPT–MA"). Dr. Chen is the president of the Debtor and Chris Chen is its treasurer. MPT–MA was originally located in North Andover, Massachusetts, but in 1991, its lease expired and it relocated to Salem, New Hampshire. The Chens incorporated the Debtor under the laws of New Hampshire on October 11, 1993. The Secretary of State for the Commonwealth of Massachusetts formally dissolved MPT–MA on May 18, 1994.

MPT–NH filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on January 18, 2002.[2] The SBA filed a proof of claim (the "SBA Claim") on March 13, 2002, in the amount of $369,259.87. See Claim No. 3. H.F. Huang filed her proof of claim (the "Huang Claim") on April 25, 2002, in the amount of $322,000. See Claim No. 4. The SBA filed its Motion on June 14, 2002. See Court Doc. 39. Ms. Huang filed a response and accompanying memorandum of law on November 14, 2002. See Court Docs. 96 and 97. The Debtor filed a response objecting to the SBA's standing to object to the Huang claim and the form of the SBA's objection. See Court Doc. 63. On October 22, 2002, the SBA filed its Supplemental Motion, in which the SBA alleged certain mistakes in the supporting documentation of the affidavit filed by Dr. Chen in United States v. Chen, et al., a case pending before the United States District Court in Massachusetts. See Court Doc. 88. The Debtor filed a supplemental objection and accompanying memorandum of law. See Court Docs. 111 and 112. The Debtor filed its Objection to Claim on August 28, 2002, to which the SBA filed an objection. See Court Docs. 75 and 94.

### A. Claim No. 3

In 1988, the Debtor entered into lending arrangement with Minority Equity Capital Company, Inc. ("MECCO"), involving a debenture and equity in MPT–MA. The principal amount of the loan was $180,000 and interest accrued at a rate of twelve percent per year beginning in December 1988. The equity was in the form of 12,-000 shares of preferred stock in the Massachusetts entity, which MECCO pur-

---

1. The Court admitted the videotape deposition testimony of H.F. Huang, a citizen and resident of Taipei, Taiwan, on December 13, 2002. (Court Doc. 108).

2. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, et seq.

chased for $120,000. The preferred stock entitled the holder to dividend payments and distributions upon the voluntary or involuntary liquidation, dissolution, or winding up of the affairs of the corporation and the preferences were senior to the common stock and all other capital stock of MPT–MA. Cumulative dividends on the preferred stock accrued at the rate of eighty cents per share from December 1988.

In 1991, as noted above, the Debtor relocated to Salem, New Hampshire. Dr. Chen testified that he advised the Debtor's contact at MECCO, Don Green, that the Debtor was moving to New Hampshire. At the time of the move, the Debtor did not sell any of its assets. MECCO did not request redemption of its stock interest. The Debtor has never been able to pay a dividend to shareholders either as a Massachusetts or New Hampshire entity and no stock has been redeemed. The SBA, as assignee to MECCO's claims, brought suit in the U.S. District Court for the District of Massachusetts on March 23, 2000, against the Debtor and Chens, as guarantors of the Debtor's obligation. The Debtor's Chapter 11 bankruptcy filing stayed the action against it. On February 3, 2003, this Court denied without prejudice the SBA's Motion for Relief from the Automatic Stay. *See* Court Doc. 124.

### B. *Claim No. 4*

Ms. Huang is a citizen of Taiwan and a close friend of Yen Hwa Mar, Chris Chen's sister. Ms. Huang visited the United States in 1989, and met with Dr. Chen and toured the MPT–MA's facilities. Dr. Chen testified that he did not feel comfortable asking her directly for funds because of Chinese custom. At the request of Chris Chen, Ms. Mar asked Ms. Huang if she was able to loan funds to the Debtor. Ms. Huang agreed to do so.

In September of 1989, Ms. Huang wired $230,000 to the Wells Fargo account of Ms. Mar in San Francisco. Additionally, both women testified that Ms. Huang had loaned $20,000 to Ms. Mar personally as well. Subsequently, Ms. Mar wired $100,000 directly to the Debtor. The remaining $130,000, plus the $20,000 initially borrowed by Ms. Mar were wired to MPT through a capital account maintained by an unrelated business entity, Buggy Wash, Inc. ("Buggy Wash"). Buggy Wash has never been an investor in or lent money to the Debtor. Chris Chen testified she was helping Buggy Wash with its bookkeeping and that she had check writing authority. Although the Debtor had a money market account, the Chens testified that the funds were deposited into Buggy Wash's capital account with the expectation that the funds would earn interest and to separate them from other funds of the Debtor. The funds were in the account for approximately three months and did not earn any interest.

According to Dr. Chen's testimony, the Debtor was unable to pay Ms. Huang any interest because it was suffering financial difficulties. Ms. Huang testified that she requested repayment on several occasions. In 1991, Ms. Huang and the Debtor entered into a Debt Conversion Agreement (the "Conversion Agreement"). *See* Debtor's Ex. 111, *Debt Conversion Agreement.* The Conversion Agreement provided that Ms. Huang's interest in the Debtor was converted from debt to shares of Series B Preferred Stock, with a dividend of eighty cents per share per annum. *See id.; see also* SBA's Ex. 15, *Minutes of Special Meeting of Board of Directors.* The Debtor was never able to pay a dividend to Ms. Huang. Ms. Huang never exercised any control over the affairs of the Debtor and only communicated with the Chens occasionally by telephone. In early 1993, Dr.

Chen learned that Ms. Huang, an individual in the retail shoe business, was encountering financial difficulties herself. As a result, Dr. Chen and Ms. Huang testified that her equity was reconverted back to debt with the expectation that interest payments would be made. Dr. Chen prepared a promissory note dated January 4, 1993, in the amount of $250,000 (the "Promissory Note"), which provides for an 8% rate of interest and a maturity date of December 31, 2003. SBA Ex. 4, *Proof of Claim with attached Promissory Note.* Since 1998, the Debtor has been making interest payments to Ms. Huang under the terms of the Promissory Note. These payments are reflected as interest payments on the Debtor's balance sheets and tax returns.

*DISCUSSION*

### I. SBA Motions

In its Motion, the SBA seeks an order disallowing the Huang Claim pursuant to section 502(b)(1), arguing that the Promissory Note that forms the basis of the claim was created without consideration and, thus, is unenforceable. The Debtor's objection to the SBA Motion questioned the SBA's standing to object to the Huang claim and the form of the SBA's objection.

 Section 502(a) provides that "[a] claim ..., proof of which is filed under section 502 of this title, is deemed allowed, unless a *party in interest* ... objects." 11 U.S.C. § 502(a) (emphasis added). The Debtor argues that the SBA lacks standing to pursue its Motion. However, "'the needs of orderly and expeditious administration do not permit the full and unfettered exercise of [a creditor's] right to object to the allowance of another creditor's claim. The most important qualification attached to the right of a creditor to object is that it is the trustee who acts as

the spokesman for all the creditors in discharge of the trustee's duty unless the trustee refuses to take action."' *Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1142 (1st Cir.1992) (quoting *In re Morrison,* 69 B.R. 586, 589 (Bankr.E.D.Pa. 1987)). Additionally, there have been Courts, although not within the First Circuit, that have held a creditor does have standing to object if his or her rights are directly implicated by a claim. *In re Dominelli,* 820 F.2d 313 (9th Cir.1987); *In re Grassgreen,* 172 B.R. 383 (Bankr.M.D.Fla. 1994). This Court finds that the SBA has standing to object to Ms. Huang's claim.

 Further, the Debtor contends that the SBA's allegations should properly be brought as an adversary proceeding. *See* Court Doc. 63. An objection to claim is a contested matter pursuant to Fed. R. Bankr.P. 9014. However, when the objection is joined with certain counterclaims, at least the counterclaim portions must be brought as an adversary proceeding pursuant to F.R. Bankr.P. 7001. Fed. R. Bankr.P. 3007; 4 Collier on Bankruptcy ¶ 502.02.[2][d] (Lawrence P. King ed., 15th Ed.2001). In this case, the SBA's request for the Court to recharacterize the Huang claim is not a type of action listed in Rule 7001 that must be brought as an adversary proceeding. Therefore, the objection to claim is procedurally sound.

 Federal Rule of Bankruptcy Procedure 3001(f) states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.P. 3001(f); *see also Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.),* 993 F.2d 915, 925 (1st Cir.1993). "In order to rebut the presumption that attaches to a proof of claim, a party objecting must produce 'substantial evidence.'" *Notinger v. Auto Shine Car Wash Systems, Inc. (In re*

Campano), 293 B.R. 281, 285 (D.N.H.2003) (quoting *United States v. Clifford (In re Clifford)*, 255 B.R. 258, 262 (D.Mass.2000)); *see also Hemingway Transp.*, 993 F.2d at 925 ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence* ").

■ Ms. Huang filed her proof of claim on April 25, 2002. The Huang claim has attached to it the Promissory Note. The claim constitutes prima facie evidence of both the validity and amount of her claim. The claim is also supported by the affidavits of Ms. Huang and Ms. Mar, and the affidavit and deposition testimony of Dr. Chen. Accordingly, the Court finds that Huang has alleged facts sufficient to support her claim, satisfying her initial burden.

■ Section 502(b) sets forth the standards of allow ability. 11 U.S.C. § 502(b). Section 502(b)(1) states that a claim is disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." If a claim is invalid under state law for lack of consideration, it is to be disallowed pursuant to section 502(b)(1). *In re Beverages Int'l Ltd.*, 50 B.R. 273, 279 (Bankr.D.Mass.1985). The test for consideration is "any consideration to support a simple contract." *Id.* at 280. The SBA does not dispute the validity of the Conversion Agreement. Pursuant to that agreement, Ms. Huang had a right to receive dividends and to exercise her right of redemption. However, the Debtor did not pay any dividends and Ms. Huang did not redeem her stock. Ms. Huang gave up her rights to dividends and redemption under the Promissory Note, which this Court finds is legally sufficient consideration.

The SBA also contends that the Debtor issued the Promissory Note out of a "moral obligation" and that Dr. Chen exceeded his corporate authority in executing the Promissory Note. The Court has already determined that there was legally sufficient consideration for the Promissory Note. Further, the SBA did not provide any evidence to show that Dr. Chen did not have such corporate authority or that he exceeded it.

The two parties diverge as to when the Promissory Note drawn in favor of Ms. Huang was created. The SBA claims that the note was produced sometime after 1995 and backdated. The Debtor argues that the note was issued on January 4, 1993. Even if the Court were to adopt the SBA's chronology of events, the Debtor has been making interest payments to Ms. Huang since 1998, and the Debtor filed for bankruptcy in 2002. Additionally, the SBA's time line does not comport with its contention that the facts of this case are similar to those in *In re Georgetown Bldg. Assocs., Ltd. P'ship.* See 240 B.R. 124 (Bankr.D.D.C.1999) (finding overwhelming evidence that intention of partnership was to treat advances as capital contributions). In *Georgetown*, the court recharacterized the investors' claims as debt because, *inter alia*, after the debtor filed its bankruptcy case and "reorganization purposes motivated [i]t to argue that the advances were debt, the investors filed income tax returns changing the previous treatment of the advances as capital contributions." *Id.* at 127. The facts of the present case are distinguishable. The SBA doesn't claim that Ms. Huang's interest changed on the eve of or post-bankruptcy but rather that "the motives of the Debtor and claimant might have been influenced by the fact that in early 1998 the Receiver for MECCO was taking steps to begin enforcement proceedings and that in late 1998 SBA

received an assignment of these claims from the Receiver." Court Doc. 40 at 8.

Further, in its Supplemental Motion, the SBA alleges that the Chens have committed fraud on the court because a check, discussed in the affidavits of Dr. Chen and Chris Chen, has been explained as both a loan to the Debtor from the Chens and a payment on a loan to the Chens. *See* Court Doc. 88. However, the SBA did not prove its allegation.

Alternatively, the SBA argues that the Huang Claim should be recharacterized as junior preferred equity by the Court pursuant to section 105(a). Although the First Circuit has not yet addressed the issue, other courts, two of which are within the First Circuit, have determined that bankruptcy courts may recharacterize debt as equity pursuant to section 105, where a creditor has contributed capital to debtor in form of loan, but the loan has substance and character of equity contribution. *See e.g. Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 748–49 (6th Cir.2001); *Blasbalg v. Tarro (In re Hyperion Enter., Inc.)*, 158 B.R. 555 (D.R.I.1993); *Aquino v. Black (In re AtlanticRancher, Inc.)*, 279 B.R. 411 (Bankr. D.Mass.2002). Further, in an earlier case, Judge Yacos, noting the evolving nature of this area of law, articulated a joint standard for both recharacterization and equitable subordination. *See In re A.F. Walker & Son, Inc.*, 46 B.R. 186, 189 (Bankr. D.N.H.1985).

 "In a recharacterization analysis, if the court determines that the advance of money is equity and not debt, the claim is recharacterized and the effect is subordination of the clam 'as a proprietary interest because the corporation repays capital contributions only after satisfying all other obligations of the corporation.' " *AtlanticRancher*, 279 B.R. at 432 (quoting Matthew Nozemack, Note, *Making Sense Out of Bankruptcy Courts' Recharacterization of Claims: Why Not Use § 501(c) Equitable Subordination*, Wash. & Lee L.Rev. 689, 719 (1999)); *see also Hyperion*, 158 B.R. at 561 ("where shareholders have substituted debt for adequate risk capital, their claims are appropriately recast as equity ..."). However, recharacterization "turn[s] on whether a debt actually exists, not on whether the claim should be equitably subordinated." *AutoStyle Plastics*, 269 F.3d at 748 (quoting Nozemack, *Making Sense Out of Bankruptcy Courts' Recharacterization of Claims*, at 716).

In *In re A.F. Walker & Son, Inc.*, Judge Yacos, analyzing the subjects in conjunction, noted that recharacterization and equitable subordination required, at a minimum, that the following be shown:

(1) The insider-claimant was in a position to, and did, dominate the affairs of the debtor corporation;

(2) that at the time of the transaction in question the insider was aware of financial conditions and problems, of which the general unsecured creditors were not generally aware, which made it unrealistic to believe that the "debt" in question would be paid off within any specific time frame as a true debt, as opposed to a further risk-investment in the company;

(3) that objectively the ultimate repayment of the "debt" in question was dependent upon a return to profitability by the company or other substantial "turnaround" in its business operations; and

(4) that to give such an insider-claimant on such facts equal status as a "creditor" would be to give the insider an "unfair advantage" over other creditors who existed at that time and still remain unpaid in the bankruptcy proceeding.

*A.F. Walker*, 46 B.R. at 189. However, in a subsequent decision in the context of equitable subordination, Judge Yacos noted that the *A.F. Walker* decision involved an insider and an attack on the undercapitalization of the debtor, "which arguably might have supported recharacterization of the insider's 'loans' to the debtor as in effect capital contributions in the true economic sense. In that context, it seemed to this court that actual misconduct was not a necessary element—although this court may be the only court so noting the distinction." *In re 200 Woodbury Realty Trust*, 99 B.R. 184, 188 n. 4 (Bankr.D.N.H. 1989) (citations omitted).

 Subsequent recharacterization decisions have clarified the standard. *See e.g. AtlanticRancher*, 279 B.R. at 433 (citations omitted) (noting that "once considered solely in conjunction with the doctrine of equitable subordination, bankruptcy courts now consider recharacterization a separate cause of action"). Generally, courts should consider eleven factors in evaluating whether money transferred by a party to the debtor should be treated as a debt claim or recharacterized as a capital contribution:

(1) the names given to the instruments, if any, evidencing the indebtedness;

(2) the presence or absence of a fixed maturity date and schedule of payments;

(3) the presence or absence of a fixed rate of interest and interest payments;

(4) the source of repayments;

(5) the adequacy or inadequacy of capitalization;

(6) the identity of interest between the creditor and the stockholder;

(7) the security, if any, for the advances;

(8) the corporation's ability to obtain financing from outside lending institutions;

(9) the extent to which the advances were subordinated to the claims of outside creditors;

(10) the extent to which the advances were used to acquire capital assets;

(11) the presence or absence of a sinking fund to provide repayments.

*AutoStyle Plastics*, 269 F.3d at 749–50 (citing *Roth Steel Tube Co. v. Comm'r*, 800 F.2d 625, 630 (6th Cir.1986)). In contrast to the eleven factor test enunciated by the court in *AutoStyle Plastics*, the bankruptcy court in *AtlanticRancher* and the district court in *Hyperion* focused on the following factors:

(1) the adequacy of capital contributions;

(2) the ratio of shareholder loans to capital;

(3) the amount or degree of shareholder control;

(4) the availability of similar loans from outside lenders;

(5) certain relevant questions, such as

 (a) whether the ultimate financial failure was caused by undercapitalization;

 (b) whether the note included payment provisions and a fixed maturity date;

 (c) whether a note or other debt document was executed;

 (d) whether advances were used to acquire capital assets; and

 (e) how the debt was treated in the business records.

*Hyperion Enter.*, 158 B.R. at 561; *AtlanticRancher*, 279 B.R. at 434.

 However, regardless of the standard used, "[n]o one factor is controlling or decisive" and " '[t]he more [a trans-

action] appears to reflect the characteristics of ... an arm's length negotiation, the more likely such a transaction is to be treated as debt.'" *AutoStyle Plastics,* 269 F.3d at 750 (quoting *In re Cold Harbor Assocs.,* 204 B.R. 904, 915 (Bankr.E.D.Va. 1997)); *see also Hyperion Enter.,* 158 B.R. at 561 (finding that the factors in the recharacterization analysis must be considered in the aggregate and no one factor is determinative). In the present case, the SBA has failed to establish sufficient grounds for recharacterizing the debt under any standard.

There is an instrument of indebtedness in this case, the Promissory Note, but the parties disagree when the second instrument was prepared. As discussed above, the Promissory Note is a valid and enforceable legal instrument. Further, the SBA was not able to prove its contention that the Promissory Note was created and backdated sometime after 1995. Although the SBA alleged that the Promissory Note was "typed and printed with a fine laser print quality that was not used by MPT in 1993 and on paper that carried a letterhead not used by MPT until late 1995," the testimony did not support a finding of fraud as Dr. Chen testified that the Debtor used at least 3 or 4 printers and several letterheads. Court Doc. 40, *Brief* at 3.

Further, the SBA contends that the funds stopped in San Francisco and that there is no evidence that Ms. Mar deposited the funds or wired them to MPT or the Chens. However, the testimony of Ms. Mar, Ms. Chen, and Ms. Huang corroborated flow of money and established that Ms. Huang loaned the Debtor money through Ms. Mar, Chris Chen's sister. The principals admitted that in 1989 when funds were loaned, the loan was not documented. While the Debtor admitted that the transaction is unusual to American standards, is was the way it was done following Chinese custom. Further, Ms. Huang testified that from the outset of the transaction, she considered the funds to be a loan. The SBA did not present any evidence to contradict the testimony of Ms. Mar, Ms. Huang, or Dr. Chen.

There appears to be a fixed maturity date and rate of interest under the promissory note. Evidence does demonstrate that the Debtor did not timely document the reconversion in its balance sheets. However, there is no evidence that the delay was deliberate or intended to mischaracterize the nature of the obligation. Even under the SBA's time line of events, the Huang claim was accurately reflected again as debt by 1998. The Debtor made interest payments to Ms. Huang in 1999. The Debtor did not file bankruptcy until January 2002. "No one factor is controlling or decisive." *AutoStyle Plastics,* 269 F.3d at 750. The manner of documentation is only one factor in the recharacterization analysis. Further, there is no evidence on the record as to extent of capitalization. In his testimony, Dr. Chen did indicate that the Debtor had trouble getting outside loans. However, in order for the funds transferred by Ms. Huang to be recharacterized, the Plaintiff needed to demonstrate some connection to capitalization.

In recharacterization cases, the claims of creditors who were corporate insiders and/or had conducted their transactions with the debtors in some inequitable manner are closely scrutinized. *See Hyperion,* 158 B.R. at 561 (applying multifactor approach to recharacterization analysis, including the amount or degree of shareholder control). *AtlanticRancher,* 279 B.R. at 435 (holding that advance to undercapitalized debtor characterized as a loan, but which gave insider pervasive control over the debtor's operation and a right to convert the advance into a forty-seven

percent equity interest at any time over a ten-year period, was an equity investment). In the present case, there is no allegation that Ms. Huang was allowed to participate in management of the Debtor flowing from this transaction, which would be more indicative of a capital contribution. There is no evidence that Ms. Huang, who does not speak English, ever participated in any capacity in the corporate decision-making or business operations of the Debtor, nor that she has intervened in any other transactions between the Debtor and its investors. The SBA has not provided sufficient evidence of inequitable conduct or that Ms. Huang functioned as a corporate insider in her dealings with the Debtor.

After considering the facts in light of the relevant factors, the Court finds that the transaction constitutes a loan. The SBA alleges insufficient facts to support a claim for recharacterization of the transaction as a capital contribution.

## II. Objection to Claim

■■■■■ The SBA filed its proof of claim on March 13, 2002, in the amount of $369,259.87. *See* Claim No. 3. The SBA claim has attached to it several items of supporting documentation. *See id.,* Exhibits A–H. Generally, a proof of claim constitutes prima facie evidence of both the validity and amount of the SBA's claim. *See* Fed. R. Bankr.P. 3001(f); *see also In re Hemingway Transp., Inc.,* 993 F.2d at 925. However, the SBA provided no evidence to support the alleged secured status of its claim. Accordingly, the Court finds that the SBA has satisfied its initial burden, other than with respect to the priority status of its claim. Thus, to the extent the Debtor's Objection to Claim challenges the

secured status of Claim No. 3, it is sustained.

■■■■ However, the Debtor has the burden to produce substantial evidence to rebut the SBA's prima facie case as to the amount of its claim. *See In re Hemingway Transp., Inc.,* 993 F.2d at 925; *In re Campano,* 293 B.R. at 285. The SBA's preferred stock entitled the holder, upon the voluntary or involuntary liquidation, dissolution, or winding up of the affairs of the corporation, "preferred payment of ten dollars ($10.00) plus an amount equal to all accumulated and unpaid dividends thereon at the dividend rate of eighty cents ($.80) per share per annum, whether or not declared by the Board of Directors, without interest." Debtor's Ex. 101, *Designation of Rights and Preferences of the Series A Cumulative Redeemable Preferred Stock.* The SBA claims that these dividend accrual and stock redemption provisions entitle it to $244,800 as of the date of the petition. *See* Court Doc. 94. However, the preferred stock agreement further provides that "[i]f the net assets of the corporation shall be insufficient to pay in full the preferential amounts among the holders of the Series A Shares as aforesaid, then each issued and outstanding Series A Share shall entitle the holder of record thereof to an equal proportion of said net assets ...." Debtor's Ex. 101, *Designation of Rights and Preferences.* The SBA did not show, given this provision, that they would have been paid the full amount upon MPT–MA's dissolution.[3] The Court finds that the Debtor has failed to produce sufficient evidence to rebut the SBA's prima facie case and overrules its Objection to Claim in part and sustains it to the extent that the SBA claim is not a secured claim. However, the SBA shall file an amended

---

**3.** The Debtor alleged that the Debtor's move from Massachusetts to New Hampshire was a migratory merger rather than a dissolution. However, the Debtor did not sufficiently demonstrate that this was the case.

proof of claim on or before December 10, 2003, clarifying the basis for any value it assigns to the preferred stock and providing evidence that the assets of MPT–MA and MPT–NH had adequate value for the dividends to be issued in the amount claimed.

### CONCLUSION

For all of the above reasons, the SBA Motions are denied and Debtor's Objection to Claim No. 3 of the SBA is sustained only regarding the secured status of the SBA's claim, otherwise the objection is overruled and the SBA shall file an amended proof of claim clarifying the amount it is owed. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.